**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| PAMELA RINGOR, | ) |
| | ) |
|     Plaintiff, | ) Cause No.:   4:17-cv-44 |
| | ) |
|     v. | ) |
| | ) |
| KROGER LIMITED PARTNERSHIP, d/b/a | ) |
| KROGER FOOD STORES and | ) |
| | ) |
| LESLIE PUETZ | ) |
|     Defendants. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Pamela Ringor ("Ringor"), by counsel, files her Complaint pursuant to the Americans with Disabilities Act Amendments Act ("ADAAA") as codified in 42 U.S.C. § 12101 *et seq,* against Defendant Kroger Food Stores ("Kroger") for disability discrimination and retaliation.  Ringor files her state Complaint against Defendant Leslie Puetz ("Puetz") for defamation.

## NATURE OF CASE

This is an action pursuant to 42 U.S.C. § 12101 *et seq* to redress Defendant Kroger's discrimination against Ringor because of her disability and retaliation against Ringor for having engaged in the protected activity under the ADAAA of requesting a reasonable accommodation.

Ringor brings a state claim of defamation against Defendant Puetz.

1

## JURISDICTION AND VENUE

1. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 as this matter involves federal law and supplemental jurisdiction under 28 U.S.C. § 1337.

2. Venue is proper in this Court pursuant to 28 U.S. C. § 1391 in that at all relevant times Ringor was a resident of this district, Kroger was conducting business within this district, and the activities giving rise to Ringor's claims during the relevant time period took place in this District.

3. On June 6, 2016, Ringor timely filed a charge of disability discrimination and retaliation with the United States Equal Employment Opportunity Commission.

4. The EEOC issued its Notice of Right to Sue, dated April 6, 2017, to Ringor.

5. Ringor received a copy of the EEOC's Notice of Right to Sue on or about April 10, 2017.

6. Ringor timely files her Complaint under the ADAAA within ninety days of the EEOC's Notice of Suit Rights.

## PARTIES

7. At all times relevant to this complaint, Ringor was an employee for Kroger and worked as a Pharmacist in Charge and Staff Pharmacist.

8. At all times relevant to this complaint Kroger conducted business operations within the boundaries of the Northern District of Indiana.

9. Kroger has more than five hundred employees.

10. At all relevant times Defendant Puetz was an employee of Kroger and worked as a Pharmacy technician.

11. Defendant Puetz resides within the geographical boundaries of the Northern District of Indiana.

## SUPPORTING FACTS

12. Ringor is a qualified Pharmacist who has a vision impairment that substantially limits the major life activity of seeing.

13. Ringor is an employee of Kroger and works as a Staff Pharmacist. At all times relevant to this action, Ringor was able, with a reasonable accommodation, to perform the essential functions of the position of pharmacist, staff pharmacist, and pharmacy manager.

14. Ringor was first hired by Kroger as a Staff Pharmacist in August 2006.

15. In 2008 Ringor was promoted to Pharmacy Manager at Kroger store 843.

16. Kroger store 843 is within walking distance of Ringor's residence, thus permitting Ringor to walk to and from work and eliminate the need to drive.

17. Ringor is restricted from driving because of her vision impairment.

18. Over the course of her employment and until 2016 Ringor received good performance evaluations.

3

19. Ringor's Pharmacy consistently had the highest audit ratings within her region.

20. On or about September 24, 2015, Ringor notified management officials, including her direct supervisor, Linda Whicker, that her vision was failing and that she was suffering headaches and nausea due to excessive exposure to light.

21. A month later, on October 27, 2015, Ringor requested a larger computer monitor (even offering to purchase it herself) as a reasonable accommodation in order to perform the essential functions of her job, reviewing and filling prescriptions and supervising the Pharmacy technicians' work.

22. In response to Ringor's request for a larger computer monitor, Whicker, Ringor's supervisor, told Ringor that she did not think Kroger would approve her request.

23. However, a few weeks later, Kroger installed a larger monitor for Ringor which benefited the other Pharmacy employees as well.

24. Ringor also asked that her work hours be reduced from thirteen hours to no more than nine hours per shift.

25. On or about November 6, 2015, Ringor asked Whicker if she and another Pharmacist, Stacy Bible, could job share so that Ringor could work the reduced schedule of nine hours.

26. Whicker responded by telling Ringor that she would have to check with her boss, Greg Fox, Head Merchandiser for the Central Division.

4

27. Ringor explained that her doctor had prescribed a reduced work schedule in order to ameliorate and reduce the prolonged exposure to light.

28. On November 10, 2015, Ringor renewed her request for a larger monitor.

29. A day or two later, Whicker told Ringor that her boss, Greg Fox, had rejected her request to job share without providing a reason for rejecting her request.

30. On November 16, 2015, Whicker brought what appeared to be a used larger monitor to Ringor's pharmacy for Ringor to use.

31. After initially being denied her job share request, on November 19, 2015, Ringor went to her doctor and obtained a doctor's note verifying her vision condition and the need for a reduced work schedule of not more than nine hours.

32. On December 9 & 10, 2015, Ringor visited Johns Hopkins in Baltimore to consult with an eye specialist.

33. Upon returning from her visit to Johns Hopkins, Ringor informed Whicker and other management officials of her eye disability diagnosis.

34. On December 13, 2015, after Ringor returned from Johns Hopkins, Kroger officials at store 843 accommodated Ringor's vision impairment by allowing her and Stacy Bible to arrange their respective shifts so that Ringor could work a reduced work schedule of nine hours per shift.

35. However, on December 21, 2015, Whicker informed Ringor that she needed to provide a doctor's note certifying that she could "see" to perform her work as a pharmacist.

5

36. Whicker told Ringor that she also needed a doctor's note certifying that she was mentally capable of working.

37. On or about December 23, 2015, Ringor obtained and provided a doctor's note certifying that her near-sightedness was sufficient for her to perform work as a pharmacist.

38. For the next several months Kroger continued to allow Ringor and Stacy Bible to maintain their work schedule arrangement which permitted Ringor to work a reduced nine-hour schedule.

39. Moreover, store 843 was within walking distance of Ringor's residence, permitting Ringor to walk to and from work, thus allowing Ringor to avoid having to arrange transportation.

40. Over the course of their employment at store 843, two sisters, Leslie Puetz and Amanda Newgent, demonstrated poor attitude problems while working under Ringor.

41. Ringor counseled both sisters in accordance with Kroger disciplinary policies and reported the sisters' poor attitude problems to Kroger management.

42. Over the course of their employment at Ringor's store, Kroger management assured Ringor they would move the sisters because it was against policy to have relatives working in the same department and because they had caused so much turmoil at store 843.

43. However, Kroger, after being placed on notice of Ringor's disability and need for accommodation, changed their mind and decided to leave the sisters working at Ringor's store.

44. Sometime in the latter half of 2015, Ringor changed the sisters' work schedule such that it required both of them to work one weekend out of five.

45. The two sisters were very vocal about Ringor having changed their respective work schedules.

46. After Ringor changed their schedules, they began a program of lodging false allegations against Ringor of mis-filling prescriptions, violating prescription and pharmaceutical practices, and violating Kroger policies.

47. On April 14, 2016, Kroger suspended Ringor without pay based on the sisters' allegations of misconduct.

48. After its investigation into the sisters' allegations, Kroger concluded that Ringor had done nothing wrong and agreed to pay her for the suspension period.

49. Ringor again asked that the sisters be separated and moved to another store.

50. On April 22, 2016, Kroger officials met with Ringor and informed her that since she was having so much difficulty at her current store, they would demote her to a staff pharmacist, move her to another store, and put her on a three-month probation and a Performance Development Plan, giving her a "new environment" and a "new start." Ringor believes and therefore alleges that this stated reason for demoting her, relocating her, and putting her on probation is a pretext for the true reason that Kroger wanted her to resign. Kroger retaliated against her for requesting accommodations and having a disability.

7

51. When Ringor asked for the basis of the Performance Development Plan, Kroger told her that they couldn't tell her at that time and that they would have to get back to her.

52. However, they admitted that it was not for violation of Kroger's "Customer First" policies,

53. On April 24, 2016, Kroger transferred Ringor to store 824 which is about a fifteen-minute drive from Ringor's residence.

54. Kroger forced Ringor to work thirteen hour shifts at the new store in accordance with their standard shift schedule, thus revoking the accommodation that was still needed.

55. Ringor asked to revert to her nine-hour shift schedule but Kroger refused.

56. Ringor's husband was forced to drive Ringor to and from her new store because Ringor cannot drive due to her vision impairment.

57. Ringor also asked for her larger computer monitor to be transferred to the new store; Kroger did not respond to her request.

58. Upon transferring to the new store and working without the larger computer monitor and working the lengthened thirteen-hour shift, Ringor immediately began to suffer from the same symptoms she had previously suffered, extreme headaches and nausea, due to prolonged exposure to light and staring at the computer screen.

**Claim I.  ADAAA Discrimination.**

59. Ringor incorporates paragraphs 1 – 58 above as if fully stated herein.

8

60. At all relevant times, Defendant Kroger was Ringor's employer.

61. At all relevant times, Kroger employed more than 500 employees.

62. Ringor has a vision impairment that limits her major life activity of seeing.

63. At all relevant times, Kroger and Ringor's supervisors were aware of her vision impairment.

64. Ringor asked for an accommodation to accommodate her vision impairment in the form a larger computer monitor and a reduction of prolonged exposure to light.

65. Ringor's request to job share would have reduced her work schedule from thirteen hours to nine hours, thus reducing her exposure to light.

66. Kroger unnecessarily delayed granting Ringor's request for an accommodation by initially refusing Ringor's request for a reduced work schedule by denying her request to job share with Stacy Bible.

67. Kroger had no legitimate reason for delaying an accommodation for Ringor.

68. After having been notified of her vision diagnosis, in December 2015 Brian Bostrom, HR Manager for Ringor's store, demanded Ringor undergo unnecessary medical examinations in violation of section 12112 (d) of the ADAAA, even though he was aware of her limitations and that she could in fact perform her duties Pharmacist In Charge with accommodations she had arranged for herself.

69. Ringor had to independently arrange to modify her schedule and a co-worker's schedule in order for Ringor to work a reduced nine-hour schedule.

70. In April 2016 Kroger transferred Ringor to another store and required Ringor to again work a thirteen-hour work shift, knowing that a thirteen hour shift was detrimental to her vision and would consequently limit her ability to perform her essential duties

71. Ringor suffered adverse physical symptoms in the form of extreme headaches and nausea resulting from the prolonged exposure to light due to the increase from nine hours per shift to thirteen hours.

72. Ringor also suffered significant eye strain from having to work from a smaller computer monitor at store 824.

73. Kroger discriminated against Ringor by unnecessarily delaying her reasonable accommodation in the form of reducing her work schedule so as to reduce her exposure to light and by delaying the installation of a larger computer monitor.

### Count II. ADAAA Retaliation

74. Ringor incorporates paragraphs 1 – 58 above as if fully stated herein.

75. In November 2015 Ringor had asked for a reasonable accommodation in the form of a larger computer monitor and a reduced work schedule in order to reduce her exposure to light.

76. Kroger was well aware of Ringor's vision impairment.

77. In January 2016 Ringor commenced her self-arranged reduced nine-hour work schedule which her supervisors were well-aware of.

78. In April 2016 Kroger discriminated against Ringor because of her disability and retaliated against Ringor for having engaged in protected activity under the ADAAA by unreasonably accepting the false reports of a subordinate, Puetz, and using them as a basis to investigate and suspend Ringor while doing nothing to Puetz.

79. To the best of Ringor's knowledge and belief, Puetz had not, prior to her reports to management of Ringor's alleged misconduct, requested an accommodation for a disability.

80. Ringor had requested a reasonable accommodation prior to Puetz's false reports to Kroger officials regarding Ringor.

81. Prior to having requested a reasonable accommodation in the fall of 2015 and as a Pharmacist in Charge, Ringor had heretofore never had her credibility questioned.

82. Kroger made a pretextual credibility determination by crediting and acting on a subordinate's (Puetz), allegations rather than a superior's (Ringor) version of events.

83. In April 2016 Kroger retaliated against Ringor for engaging in protected activity under the ADAAA (requesting a reasonable accommodation) by suspending Ringor, demoting Ringor to Staff Pharmacist, placing her on an unwarranted Performance Development Plan, and transferring her to another store which was not in walking distance and revoking the accommodations previously afforded her.

**Claim III. Defamation – Leslie Puetz; Kroger, *Respondeat Superior***

84. Ringor incorporates paragraphs 1 – 58 above as if fully stated herein.

11

85. At all relevant times, Defendant Puetz was an employee of Kroger and working as a Pharmacy tech at store 843 under the supervision of Pamela Ringor.

86. Between October 2015 and April 2016 Puetz told employees at store 843 and management officials, including HR, that Ringor was faking her vision impairment.

87. Puetz had no factual basis for making such statements and knew her statements were false.

88. Puetz made these statements to third parties with malice and with the intent of damaging Ringor's reputation in the work place.

89. Puetz made these defamatory statements about Ringor while on duty and while working at the Kroger store.

90. Even after learning of Puetz's false statements about Ringor, Kroger took no prompt effective action to halt Puetz's false statements and by its failure to act, enabled Puetz to continue her false statements against Ringor.

91. Ringor suffered damages to her professional reputation in the work place as a result of Puetz's false statements and Kroger's failure to halt Puetz's false statements.

### CLAIM IV.  Tortious Interference with Ringor's Employment Contract

92.  Ringor incorporates paragraphs 1 - 58 and 84 – 91 above as if fully stated herein.

93. During the relevant period, Ringor had an employment relationship with Kroger.

94. Puetz knew of Ringor's employment relationship with Kroger.

95. Puetz tortiously interfered in Ringor's employment relationship with Kroger by telling Kroger management officials that Ringor was faking her vision disability, by contriving minor incidents that were taken out of context and contorting them into allegations of gross misconduct, all in an effort to induce Kroger to take disciplinary action against Ringor.

96. Puetz's false statements induced Kroger officials to delay Ringor's requests for reasonable accommodations related to her vision impairment, to suspend Ringor, and to initiate an unwarranted investigation against Ringor.

97. Ringor suffered damages because of Puetz's interference in Ringor's employment relationship with Kroger.

98. Kroger is liable to Ringor under the doctrine of *resondeat superior* and negligence because at all times relevant to Ringor's defamation claim Puetz was working for Kroger, Puetz made the false statements while on duty, Kroger became aware of Putetz's statements were false but took no action against Puetz to halt her false statements.  Kroger owed a duty to Ringor to halt Puetz's false statements about Ringor faking her eye condition and breached that duty.

**WHEREFORE**, Plaintiff requests the Court grant judgment against Defendants Kroger and Puetz and order:

    a.      Defendant Kroger to pay Plaintiff all back pay and front pay resulting from the wrongful demotion;

b.      Defendant Kroger to pay all consequential costs, including the additional commuting expenses incurred resulting from its transfer of Ringor from store 843 to 824;

c.      Defendant Kroger to pay to Plaintiff compensatory damages, including emotional distress, humiliation, severe anxiety, and professional reputation damages from being demoted and denied her previous position and responsibilities, in an amount of to be determined at trial;

d.      Defendant Puetz to pay reputational damages and emotional distress damages, in an amount to be determined at trial;

e.      Defendant Kroger to pay reputational damages and emotional distress damages under the doctrine of *respondeat superior* and negligence in an amount to be determined at trial.

f.      Defendants Kroger and Puetz to pay punitive damages in an amount to be determined at trial;

g.      Defendants to pay reasonable attorney fees and costs;

h.      A permanent injunction enjoining Defendants from retaliating against Plaintiff in terms and conditions of employment, job references, job referrals, post-employment benefits, defamatory communications to third parties, disclosure to third parties that Plaintiff was the recipient of disciplinary action, revealing that Plaintiff filed a charge of discrimination, or any other communication that may tend to disparage Plaintiff's reputation;

i.      Defendant to reinstate Plaintiff to her Pharmacy Manager position at Kroger store #843;

14

    j.       Defendants to pay pre-judgment and post-judgment interest on all damages awarded, to the maximum extent allowed by law; and,

    k.       Such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff requests trial by jury on all issues so triable.

Respectfully Submitted,

/s/ Tae Sture
Tae Sture,
Counsel for Plaintiff

Sture Legal Services
155 East Market Street, Suite 501
Indianapolis, IN 46204
Ph: (317) 577-9090
Fax: (317) 577-1102
Email: tae@sturelaw.com